# COURT OF COMMON PLEAS BALTIMORE CITY.

Filed March 28, 1913.

LEONIDAS H. EDMONSTON, AQUILLA A. BALDWIN, JOHN R. GARDNER, ALFRED A. MORELAND

VS.

EDMUND J. WACHTER.

*Charles J. Bonaparte, Archie O. New, David M. Newbold* and *Lloyd Oden'hal* for petitioners.

*Lewis Putzel* for respondent.

ELLIOTT, J.—

The petition in this case has been filed by Leonidas H. Edmonston and others, "citizens and registered voters of the State of Maryland and residents and taxpayers of the City of Baltimore, and legally entitled to vote in the said city, and members of a political party known as 'The Progressive Party,'" against Edmund J. Wachter, heretofore nominated and appointed, and now serving, as one of the Supervisors of Elections for Baltimore City, he having been appointed as the representative of the Republican party.

This Court has been asked to issue the prerogative writ of mandamus requiring and commanding the said Edmund J. Wachter to forthwith vacate and retire from the above-mentioned office of Supervisor of Elections of Baltimore City.

The grounds upon which the writ is sought are substantially these:

First—That the law providing for the appointment of Supervisors of Elections requires that "two of them shall always be selected from the two leading political parties of the State, one from each of said parties."

Second—That "the two leading political parties of the State are the Democratic party and the Progressive party."

Third—That the said Edmund J. Wachter is a voter originally suggested for the office of Supervisor of Elections by the State Central Committee of the Republican party on whose behalf he was appointed and whose representative he now is.

It is to be noted that the petition in this case does not ask for the appointment upon the Board of Supervisors of Elections of a representative of the Progressive party, and, therefore, it is clear that any action to be taken by this Court upon the petition must depend alone upon a decision as to whether or not the said Edmund J. Wachter is legally occupying the po-

sition of Supervisor of Elections for Baltimore City.

In approaching the consideration of this question it seems well that certain preliminary questions be disposed of at the very beginning.

In the first place, it is not contended but that at the time of his appointment the said Edmund J. Wachter was legally qualified to fill the office and was properly installed therein, having been named by the Governor of Maryland and confirmed by the Senate of Maryland.

If, therefore, he is to be removed from the office which he now fills it must be by reason of certain facts which have occurred and been made known since his appointment, facts which are inconsistent with his further remaining in the office.

In the second place, it may be well to consider what is meant by the words "the two leading political parties of the State."

Section 152 of Chapter 538 of the Laws of Maryland passed at the session of 1890 defines the two leading political parties as those "which polled the largest number of votes at the last preceding election."

Some controversy has arisen in the present suit as to what the term "general election" means, whether it is to be taken as meaning simply a State-wide election or is to be restricted to an election for members of the General Assembly, and this Court has been asked to conclude that there can be no general election except for Governor and members of the General Assembly, or in every second year for members of the General Assembly alone.

This Court is unable to see any reason why the words "general election" should be taken in any other than their apparent sense.

It has possibly become the popular understanding that the only general election is one at which the members of the General Assembly are elected, but an examination of the law will develop the fact that in every case where the term "general election" is so limited it is by reason of the fact that there is expressly associated with that term the further provision, "for members of the General Assembly."

The conclusion seems, therefore, entirely justifiable that there may be a general election in the State of Maryland which is not "for members of the General Assembly," and, if that is true, that it would be difficult to understand how an election held throughout the State on the same day and for the same purpose could be otherwise than a "general election".

In this particular case it appears entirely permissible to say that an election for Electors of President and Vice-President of the United States whom the Supreme Court of the U. S. has decided to be State Officers and for whose election our own Code provides "by general ticket," and who are chosen by a vote of the whole state cast on the same day, is a general election.

In re Green, 134 U. S., page 377.

MacPherson vs. Black, rec., 146 U. S., page 1.

Code 1904, Article 33, Section 144.

It may therefore be concluded that if the appointment of a member of the Board of Supervisors of Elections was to be made by the Governor of Maryland subsequent to the election held throughout the State for the choice of Electors of President and Vice-President of the United States he would under the law as it exists at present be compelled to appoint two of such supervisors from the two leading political parties casting the largest number of votes at that election.

Notwithstanding, however, the above conclusion, the question involved in and raised by the petition in this case is not yet answered.

That question expressed in a different form is this:

Is the office of a particular Supervisor of Elections made vacant by reason of the fact that the party which he was appointed to represent ceases to be one of the two leading political parties casting the highest number of votes at the preceding general election?

In other words, is the tenure of the office such as depends upon the result of an election without regard to the will of the Governor or of the Senate or both?

Could the Governor of Maryland if he were so minded remove the defendant in this case from office because the Republican party whom he was appointed to represent had ceased to be one of the two leading political parties?

In answering these questions recourse must be had to the provisions of the law as set out in Article 33, Sections 1 and 3. which provide as follows:

Section 1. The Governor biennially by and with the advice and consent of the Senate if in session, and if not in session, then the Governor alone, shall appoint, in each and every county of the State and in the City of Baltimore, three persons who shall constitute and be styled the Board of Supervisors of Elections.

Section 3. And "they shall hold office for two years and until their successors are appointed and qualified, unless sooner removed, for good cause shown, by the Governor, who shall have power to so remove them at any time upon written charges after notice and hearing.

It is hardly necessary to say that the provisions of law just quoted create an office and constitute an official for a term, one not possible to be interrupted or interfered with except upon good cause being shown and after written charges, notice and hearing had.

Townsend vs. Kurtz, 83 Md. 342.

Field vs. Malster, 88 Md. 704.

It is apprehended that it will require no argument to establish the proposition that if the defendant herein were attempted to be removed from office by the Governor of this state, such removal could only be justified for causes which involve his personal character, integrity or capacity, because those are the expressed qualifications upon which his tenure of the office was made to depend. He must, it is true, have been a representative of one of the two leading political parties at the time of his appointment to justify his nomination by the Governor and confirmation by the Senate, but being once confirmed and being removable only for cause, he had a right to the office during the term unless removed for cause after notice and hearing had.

So far as this petition is concerned the defendant is not denied as having all the qualifications for the office of Supervisors of Election which he had at the time of his appointment and confirmation with the single exception that he then belonged to one of the two leading political parties which

polled the largest number of votes at the last preceding general election, while now it is alleged that for reasons over which he had no control he has ceased to belong to either of those parties.

This court is not of the opinion that it has any right to subject the defendant to a higher test than could be applied to him if attempted to be removed by the power which appointed him. Nor is the writ of mandamus in this case necessary to secure to the petitioners the rights which they have as voters and taxpayers.

It has been repeatedly declared by our Court of Appeals that the application for the writ of mandamus is made to the sound judicial discretion of the Court and that it will not be allowed unless the Court is satisfied that it is necessary to secure the ends of justice or to subserve some just or useful purpose.

George's Creek Coal and Iron Co. vs. County Commissioners, 59 Md. 259.

The writ must therefore be denied.